**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-60639

Estate of LARRY M BRATTON,
Joann M Bratton, executrix

Plaintiff - Appellee,

VERSUS

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; AIG LIFE
COMPANIES; ITT THOMPSON INDUSTRIES INC; ITT GROUP ACCIDENT
INSURANCE PROGRAM

Defendants - Appellants.

Appeal from the United States District Court
For the Northern District of Mississippi

June 20, 2000

Before JONES, BARKSDALE and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The plaintiff, the Estate of Larry Bratton, through JoAnn Bratton, Executrix, brought this suit under § 502(a)(1)(B) and § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), to recover benefits allegedly due under an optional voluntary group accident disability insurance policy offered to salaried employees of ITT Thompson

Industries, Inc. ("ITT Thompson") and underwritten and administered by a health insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFI").[1] Mr. Bratton was employed by ITT Thompson in Mississippi from February 1971 to August 20, 1976. Shortly after ITT Thompson terminated Mr. Bratton's employment, he was severely injured in an automobile accident on August 21, 1976. As a result, Mr. Bratton filed claims for and recovered benefits under other optional plans in which he had properly enrolled as an ITT Thompson employee, including a long-term disability benefit program underwritten by Travelers Insurance Company and an accidental death and dismemberment coverage provided by the Equitable Life Assurance Society. On January 22, 1996, over nineteen years after his August 21, 1976 accident, Mr. Bratton caused a notice of claim to be submitted to NUFI for disability benefits under the optional accident disability plan, outside the time limits set in the policy, and NUFI therefore denied his claim.[2]

---

[1] The administrative record reflects that NUFI issued the master policy to International Telephone and Telegraph Corporation, et. al. ("ITT Corp."). It is undisputed that ITT Thompson employees were covered and offered optional coverage under the NUFI policy.

[2] On January 19, 1996, Mr. Bratton wrote a letter to Mr. Richard Petrocelli, Director of Benefits, ITT Automotive, Inc., at Auburn Hills, Michigan, asserting that when his accident occurred on August 21, 1976 he was employed by ITT Thompson, he was enrolled in the NUFI optional 24-hour accident coverage, and therefore he was entitled to benefits under that policy. He stated that during the latter part of 1976, when he inquired by phone of an ITT personnel employee about benefits for loss of use of feet under the dismemberment coverage, he was told that none were available unless both feet had been severed, and that he was not informed of any

2

During a bench trial, the district court, over defendants' objections, allowed the Estate of Larry Bratton to introduce evidence extraneous to the administrative record, including testimony from JoAnn M. Bratton, the widow of Mr. Bratton and Executrix of his estate, regarding the merits of the claim, such as her conversations with Mr. Bratton prior to his accident about their agreement that he should enroll for the coverage in question, her presence during his telephone conversation with an ITT Thompson or International Telephone and Telegraph Corporation, et. al. ("ITT Corp.") employee about dismemberment coverage after the accident, Mr. Bratton's statements to her following the telephone conversation, and her calculations and inferences that his final pay check stub showed the deduction of an amount for group insurance that included premiums for the disputed coverage. Rendering

other coverage that might become available. On January 22, 1996, Mr. Bratton's attorney wrote to Mr. Petrocelli, alleging essentially the same facts and asserting a claim for disability benefits under the NUFI policy. The agent for the plan administrator, NUFI, received Mr. Bratton's claim indirectly from ITT, along with all of Mr. Bratton's enrollment cards in ITT's possession, and data from Mr. Bratton's attorney. The administrative record contains no enrollment forms signed by Mr. Bratton for the type of coverage in question, and the data on Mr. Bratton's last pay check stub pertaining to his payroll deductions for optional coverages is ambiguous. On July 24, 1996, the acting plan administrator, after gathering evidence and evaluating the claim, denied it for the following reasons: "[O]n August 21, 1976, Mr. Bratton suffered an injury in a motor vehicle crash. However, no claim for benefits had been filed prior to January 22, 1996. We had this matter reviewed by local counsel, who advises that Mr. Bratton's claim for benefits is barred by the Statutes of Limitation. Therefore, no benefits are payable under this policy."

judgment for the Estate, the district court rested its decision on an equitable estoppel theory crucially based on findings of facts inferred from the trial evidence extrinsic to the administrative record. The district court inferred from JoAnn Bratton's calculations and its own based on Mr. Bratton's final pay check stub and cost of insurance data in ITT group insurance booklets introduced by the plaintiff that ITT Thompson had regularly deducted from Mr. Bratton's pay checks amounts corresponding to the cost of the optional accident disability insurance for Mr. Bratton with NUFI. The district court further found that, following the termination of Mr. Bratton's employment by ITT and his accident on August 21, 1976, he was led to believe during a telephone conversation, by an ITT personnel employee, whom the court inferred was acting as an ERISA fiduciary with respect to the group insurance in question, that his disability was not covered under the optional accident disability policy because he did not suffer severance of a limb.[3] For reasons stated in its memorandum opinion, the district

---

[3]The group accident plans available to ITT employees with NUFI provided for two types of coverages, (1) "business travel accident" coverage afforded to salaried employees of ITT while on business of ITT, and (2) optional "24-hour accident protection" covering accidents whether on or off the job, including accidents occurring in the home or while traveling. Both plans provided dismemberment coverage for actual severance of limbs. The entire cost of "business travel accident" coverage was borne by ITT. The optional "24-hour" coverage required that the employee complete and file an enrollment form and pay premiums through payroll deductions. Because Mr. Bratton was not a salaried employee on business of ITT at the time of his accident, he was not entitled to "business travel accident" coverage.

4

court rendered its final judgment ordering that the plaintiff recover of the defendants $258,394.26 ($51,000 in principal plus prejudgment interest from August 21, 1977) with interest and costs. The defendants appealed.

## I.  STANDARDS AND PROCEDURES OF JUDICIAL REVIEW
## OF ERISA PLAN ADMINISTRATOR'S DENIAL OF BENEFITS CLAIMS

ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators. *See* 29 U.S.C. § 1132(a)(1)(B).  Consistent with established principles of trust law, a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113-15 (1989).  An administrator, fiduciary or trustee is a fiduciary to the extent that he exercises any discretionary authority or control. *See id.* at 113 (citing 29 U.S.C. § 1002(21)(A)(i)).  If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *See id.* at 115.[4]

---

[4] When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion. *See Vega v. National Life Ins. Services*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc).  The existence of a conflict is a factor to be considered in determining

The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete. *See Vega v. National Life Ins. Services,* 188 F.3d 287, 295, 299 (5th Cir. 1999) (en banc) (citing *Barhan v. Ry-Ron Inc.,* 121 F.3d 198, 201-02 (5th Cir. 1997)). Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim. *See id.* at 299.[5] Thus, the administrative record consists of relevant information made available to the administrator prior to the

---

whether the administrator abused its discretion in denying a claim. *See id.* at 297. The greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be. *See id.* at 299. Under this "sliding scale" standard, the court applies the abuse of discretion standard, giving less deference to the administrator in proportion to the administrator's apparent conflict. *See id.* at 296.

[5] Further, as a safeguard against possible abuse or mistake, the claimant's lawyer may add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. *See Vega,* 188 F.3d at 300. If the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record. *See id.* at 300 (citing *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 634-35 (5th Cir. 1992)).

complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. *See id.* If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the administrator's part, award the amount due on the claim and attorney's fees. *See id.* at 302 (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)).

## II. DISCUSSION

Our review of the administrative record reveals that NUFI issued the master group optional voluntary accident policy to ITT Corp; that the policy designated NUFI as "the Company" and ITT Corp. as "the Holder"; and that neither ITT Corp., nor ITT Thompson, nor any of their affiliates or employees had or exercised any authority under the policy to act as an administrator or a fiduciary.[6] Further, the policy was administered solely by NUFI and its affiliate, AIG Life Companies, and, under the terms of the

---

[6] Under ERISA § 3(21)(A), a person is a fiduciary with respect to a plan to the extent that person (1) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (2) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so; or (3) has any discretionary authority or discretionary responsibility in the administration of such plan. *See* 29 U.S.C. § 1002(21)(A) (1999). The administrative record does not indicate that any ITT company or employee had or exercised any such authority or function.

7

policy and ERISA, the insurer, NUFI, was the designated plan administrator.[7] Consequently, we find no basis in law or the administrative record for the district court's conclusion that the ITT employee who discussed dismemberment coverage with Mr. Bratton by telephone was acting as a fiduciary with respect to the NUFI policy.[8]

For this reason, and because the district court strayed far outside the administrative record by conducting its own trial de novo on the merits of the claim, we can give no deference to its

---

[7]Under ERISA § 3(16)(A) the term administrator means the person specifically so designated by the terms of the instrument under which the plan is operated. *See* 29 U.S.C. § 1002 (16)(A). The NUFI policy, in effect, designated the insurer the plan administrator by requiring claimants to file written notices of claims and proofs of loss with the insurer, requiring insurer to provide claimants with proof of loss forms, granting the insurer the right and opportunity to have physical examinations or autopsies performed on the subject of the claim, and vesting the insurer with exclusive authority to pay or deny claims. *See Vega v. National Life Ins. Services*, 145 F.3d 673, 677, n.24 (5th Cir. 1998), *abrogated on other grounds but implicitly approved on this point*, 188 F.3d 287, 295 (5th Cir. 1999)(en banc).

[8] In *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 379 (1999), the Supreme Court held that a state law or agency rule allowing a policyholder-employer to be deemed an agent of the insurer-plan administrator in administering group insurance policies "relate[s] to" ERISA plans and, thus is preempted by ERISA. The Court explained that "deeming the policyholder-employer the agent of the insurer would have a marked effect on plan administration. It would 'forc[e] the employer, as plan administrator, to assume a role, with attendant legal duties and consequences, that it has not undertaken voluntarily'; it would affect 'not merely the plan's bookkeeping obligations regarding to whom benefits checks must be sent, but [would] also regulat[e] the basic services that a plan may or must provide to its participants and beneficiaries.'" *Id.* (citing the United States' amicus curiae brief at 27).

factual findings or application of equitable estoppel. Instead, we proceed to review the plan administrator's decision based upon the administrative record in accordance with *Vega* and the authorities upon which it relies.

The denial of benefits to Mr. Bratton by the NUFI plan administrator challenged by the plaintiff under § 1132(a)(1)(B) must be reviewed under a de novo standard because the NUFI optional voluntary accident disability policy does not give the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Bruch*, 489 U.S. at 115. As the Supreme Court indicated in *Bruch*, the court therefore should review the claim "as it would...any other contract claim — by looking to the terms of the plan and other manifestations of the parties' intent." *Id.* at 112-13 (citing *Connery v. Phoenix Steel Corp.*, 249 A.2d 866 (Del. 1969); *Atlantic Steel Co. v. Kitchens*, 187 S.E.2d 824 (Ga. 1972); *Sigman v. Rudolph Wurlitzer Co.*, 11 N.E.2d 878 (Ohio Ct. App. 1937)). For factual determinations under ERISA plans, however, we have held that federal courts owe due deference to an administrator's findings and, for their review, the abuse of discretion standard is appropriate. *See Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993); *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991).

Applying the foregoing standards to the administrative record,

9

we conclude that the administrator's denial of the plaintiff's claim should be upheld as being consistent with a correct interpretation of the insurance contract and a reasonable determination of facts based on the administrative record. Although the administrator may have misspoken in stating that the claim was barred by the "Statutes of Limitation" rather than the time limits set in the policy, her finding that "no claim for benefits had been filed prior to January 22, 1996," over nineteen years after Mr. Bratton's August 21, 1976 accident, shows that her decision was solidly based upon the record and consistent with a correct reading of the policy provisions for filing a notice of claim and a proof of loss.

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a contract based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits, under the terms of an employee benefit plan.  In connection with this statutory recognition of contractual benefits rights, Section 503 of ERISA, 29 U.S.C. § 1133, in accordance with the regulations of the Secretary of Labor, sets certain minimum requirements for the claims procedures that plans are required to follow in processing benefits claims brought by participants and beneficiaries.  *See Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir. 1994).

Pursuant thereto, the Secretary has promulgated regulations to

provide minimum requirements for employee benefit plan procedures pertaining to claims by participants and beneficiaries (claimants) for plan benefits, consideration of such claims, and review of claim denials. *See* 29 C.F.R. § 2560-503-1 (1999). The regulations require that every employee benefit plan shall establish and maintain reasonable claims procedures. *See* 29 C.F.R. § 2560-503-1(b) (1999). A reasonable claims procedure must, *inter alia*, be described in the summary plan description, not be administered or contain any provision so as to unduly inhibit or hamper the filing or processing of claims, and provide for a procedure for informing participants in a timely fashion of the time periods for decisions on claims made and the time periods for making appeals and receiving decisions thereon. *Id.* When benefits under a plan are provided or administered by an insurance company, the claims procedure pertaining to such benefits may provide for filing of a claim for benefits with and notice of decision by such company. *See* 29 C.F.R. § 2560-503-1(c) (1999).

A claim is filed when the requirements of a reasonable claim filing procedure of a plan have been met. *See* 29 C.F.R. § 2560-503-1(d) (1999). If a reasonable procedure for filing claims has not been established by the plan, a claim shall be deemed filed when a written or oral communication is made by the claimant or the claimant's authorized representative reasonably calculated, in the case of a plan provided or administered by an insurance company, to

11

bring the claim to the attention of the person or organizational unit which handles claims for benefits under the plan or any officer of the insurance company, insurance service or similar organization. *See* 29 C.F.R. § 2560-503-1(d)&(d)(3) (1999).

The NUFI policy sets forth a reasonable claims procedure which meets the minimum requirements of the Secretary's regulations. The policy's "uniform provisions," in pertinent part, state:

1. **Notice of Claim:** Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as it reasonably possible. Notice given by or on behalf of the claimant to the National Union Fire Insurance Company of Pittsburgh, Pa., or to any authorized agent of the Company, with information sufficient to identify the Insured Person or the Insured Family Member shall be deemed notice to the Company.

2. **Claim Forms:** The Company upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of the policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

3. **Proof of Loss:** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible.

* * *

7. **Legal Actions:** No action at law or in equity shall be brought to recover on the policy prior to the expiration of sixty days after written proof of loss has been

12

furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

The NUFI policy's optional 24-hour accident coverage provided a permanent total disability indemnity (not applicable to insured family members) as follows:

When as the result of injury and commencing within one year of the date of the accident an injured Person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation of profit for which he is reasonably qualified by reason of his education, training or experience, the Company will pay, provided such disability has continued for a period of twelve consecutive months and is total, continuous and permanent at the end of this period, the Principal Sum less any other amount paid or payable under Accidental Death and Dismemberment Indemnity as the result of the same accident.

Assuming that Mr. Bratton was properly enrolled under the NUFI optional voluntary accident policy on the date of his August 21, 1976 accident, and assuming that commencing within one year of his accident, he became totally and permanently disabled as defined by the policy, Mr. Bratton was required to give NUFI timely written notice of claim and timely written proof of loss. In order to give notice of claim, Mr. Bratton was required to give written notice to the company within twenty days after the occurrence or commencement of any loss governed by the policy or as soon thereafter as reasonably possible. If Mr. Bratton was properly enrolled for coverage and was rendered totally and permanently disabled by his August 21, 1976 accident, his loss would have commenced on the last

13

day of the first year following the accident if it had continued for one year thereafter. In such case, Mr. Bratton would have been required to give the company written notice of his claim within twenty days following the second anniversary of his accident, or as soon thereafter as reasonably possible. Under the facts assumed, Mr. Bratton also would have been required to give written proof of loss to the company at its office within ninety days after the date of such loss, which at the latest would have been within two years and ninety days of the accident, unless it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible. The uniform provisions of the plan further stipulate that no action at law or in equity shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

Accordingly, Mr. Bratton failed to file a written notice of claim with the company within the time allotted by the plan, because no such notice was filed within two years and twenty days of the accident. He also failed to file a timely written proof of loss with the company because no such proof of loss was filed within two years and ninety days after the accident. Further, no timely action at law or in equity was brought to recover on the policy because none was filed prior to the expiration of three years after the time written proof of loss was required to be furnished. There is nothing in the administrative record to

14

indicate that it was not reasonably possible for Mr. Bratton to file the written notice of claim and the written proof of loss within the times prescribed.  Mr. Bratton's  notice of claim and proof of loss plainly were not timely filed under the express terms of the NUFI policy.

An insured's failure to submit timely written notice and proof of his claim, does not necessarily invalidate his claim to benefits.  A state's notice-prejudice rule, under which an insurer must show that it was prejudiced by an insured's failure to give timely notice of a claim, may "regulate insurance" within the meaning of ERISA's saving clause and, thus, escape preemption by ERISA.  *See UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).[9]  Assuming without deciding that Mississippi has adopted such a notice-prejudice rule, however, we agree with NUFI that the record in the present case demonstrates that NUFI and AIG were prejudiced as a matter of law by the extraordinary delay in the

---

[9] In *UNUM* the Supreme Court examined California's notice-prejudice rule, which provides:
> '[A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered actual prejudice.  Prejudice is not presumed from delayed notice alone.  The insurer must show actual prejudice, not mere possibility of prejudice.'

*UNUM*, 526 U.S. at 366-67 (citing *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 760-61 (1st Dist. 1993)).

15

filing of the claim.[10]

In the present case, Mr. Bratton did not file a notice of claim or a proof of loss during a period of over nineteen years after his accident on August 21, 1976.  By the time Mr. Bratton filed his notice of claim on January 22, 1996, many events had occurred that severely prejudiced NUFI's right to properly determine whether Mr. Bratton had been enrolled in the optional 24-hour accident disability program on August 21, 1976 and to evaluate his claim of total and permanent disability as defined by the policy.  Mr. Bratton, who was terminally ill when he filed his notice of claim on January 22, 1996, died not long afterwards in 1996. Mr. Bratton's former employer, ITT Thompson, was acquired by McKechnie Vehicle Components in 1989.  The former ITT Thompson plant at which Mr. Bratton worked in Mississippi was closed in 1995.  ITT Industries, the former parent or affiliate corporation of ITT Thompson, submitted to the plan administrator all benefit enrollment cards in Mr. Bratton's personnel file, stating that there was no enrollment form of any type of coverage for him with NUFI.  McKechnie Vehicle Components reported that the only documents it had on file related to Mr. Bratton's health care

_____

[10] *See Lawler v. Gov't Employees Ins. Co.*, 569 So.2d 1151 (Miss. 1990)(arguably adopting or reaffirming a notice-prejudice rule).  *See also, Lawler,* 569 So.2d at 1154, 1159-60 (Robertson, J., dissenting)(citing, e.g., *Rampy v. State Farm Mutual Automobile Ins. Co.*, 278 So.2d 428, 434 (Miss. 1973)); *id.* at 1164 (Pittman, J., dissenting); *but see Bolivar County Bd. of Supervisors v. Forum Ins. Co.*, 779 F.2d 1081, 1085 (5th Cir. 1986).

16

coverage continuation, a different type of coverage provided by an insurer other than NUFI. The plan administrator's supervisor of claims determined that because Mr. Bratton filed his claim over nineteen years after the accident, the insurer was neither afforded the opportunity to complete a proper investigation of the claim nor to complete a proper medical evaluation to determine if Mr. Bratton was permanently and totally disabled as defined by the policy. The administrator determined that it could not be inferred as a reasonable probability from the unitemized $19.04 payroll deduction for "group insurance" indicated on Mr. Bratton's final pay check stub that his regular payroll deductions included $3.00 or more per month for optional accident disability coverage by NUFI. Mr. Bratton was compensated for additional days after his actual termination date, so that his final paycheck included more than the usual amount of deductions and possibly other termination-related adjustments. The plaintiff's attempt to construct after-the-fact a probable itemization of the final $19.04 deductions was not based upon reliable cost data as to the various relevant coverages prior to Mr. Bratton's termination.

Under the circumstances of this case, we conclude that the notice of claim was not timely filed and that the insurer was prejudiced by the claimant's delay of nearly two decades in notifying it of the claim. Accordingly, there is warrant in the administrative record and a valid basis in the insurance contract

17

to justify the plan administrator's denial of the claim.

We also reject the plaintiff's argument that the district court's judgment can be sustained as a recovery of disability insurance benefits based on an action under § 502(a)(3) as a remedy for a breach of a fiduciary's duty. In *Varity Corporation v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that § 502(a)(3) authorized beneficiaries of an employee welfare plan to bring lawsuits for individualized equitable relief against their employer/plan administrator for breaches of fiduciary obligations causing injuries by violations that § 502 does not elsewhere adequately remedy. In the present case, however, the record is devoid of evidence that would support a finding that ITT Thompson or ITT Corp. was a fiduciary with respect to the NUFI group accident insurance policy or that any ITT company had or exercised any discretionary authority, control or responsibility in the administration of the policy. Further, the record does not support a determination that the ITT employee who advised Mr. Bratton as to the requirements for dismemberment benefits had or was exercising fiduciary authority or was guilty of knowingly and significantly misleading Mr. Bratton as to benefits under the NUFI policy. Finally, the plaintiff in this purported § 502(a)(3) action is seeking only disability benefits allegedly due under the NUFI policy for which § 502(a)(1)(B) affords an adequate remedy. *See Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634,

18

639 (5th Cir. 1999); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998).  Accordingly, the plaintiff cannot use a § 502(a)(3) *Varity* action in this case to preserve the district court's judgment in its favor.

For the reasons assigned, the judgment of the district court is reversed, and judgment is rendered in favor of the defendants against the plaintiff, Estate of Larry M. Bratton, represented herein by its Executrix, JoAnn M. Bratton, dismissing the plaintiff's suit with prejudice.