J. Michael BOURGEOIS, Plaintiff(s)

v.

**THE PENSION PLAN FOR THE EM-PLOYEES OF SANTA FE INTERNA-TIONAL CORPORATIONS, et al., Defendant(s)**

No. CIV.A.H–02–1316.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 25, 2004.

David T. Lopez, David Lopez & Associates, Houston, TX, for plaintiff.

Dean J. Schaner, Scott M. Nelson, Haynes & Boone, L.L.P., Houston, TX, for defendants.

## *MEMORANDUM AND ORDER*

HARMON, District Judge.

Pending before the Court is Defendants' motion for summary judgment (Doc. 28). For the reasons set forth below, the Court **ORDERS** that Defendants' motion is **GRANTED**. Final judgment is entered in favor of Defendants and against Plaintiff.

## I. BACKGROUND AND RELEVANT FACTS

Plaintiff J. Michael Bourgeois ("Bourgeois") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.,* to recover pension benefits from Defendants Pension Plan for the Employees of Santa Fe International Corporations (the "Plan"), Santa Fe Investment Savings and Profit Sharing Plan (the "IS/PS Plan"), and Global Santa Fe Corporation ("GSF").[1] On August 16, 2001, by way of a letter sent to his counsel,[2] the Plan's Committee[3] denied Bourgeois's claim for benefits. That decision was appealed and affirmed by the Committee on January 10, 2002.[4] On April 8, 2002, Plaintiff filed this suit, asserting that he is entitled, pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover the pension benefits denied him by the Committee. Specifically, Plaintiff claims that he is entitled to have his pension benefit calculated using his years of service with both the Santa Fe International Corporation ("SFIC"),[5] for whom he worked from 1974–89, and the Santa Fe Exploration Corporation ("SFX"), for whom he began working in 1989, shortly after he was terminated from employment with SFIC. The Committee's decision to deny Bourgeois's claim for benefits was based on the following facts, none of which are in dispute: (1) the terms of the Plan[6] limit participation in it to "Employees";[7] (2) the Plan defines "Employee" as "any person who is in the employ of the Company" and defines "Company" as "Santa Fe International Corporation and any corporation in which Santa Fe International Corporation owns or has owned an equity interest and which has adopted this Plan";[8] and (3) SFIC neither owned nor had ever owned an equity interest in SFX, nor had SFX ever adopted the Plan.[9] Although Bourgeois does not dispute the content or construction of any relevant terms of the Plan, he nonetheless seeks "an enforcement of his right to fully accredited service."[10] Although Bourgeois has not provided the

---

**1.** The background of the prior proceedings in this action is set out in *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., et al.,* 215 F.3d 475, 477–79 (5th Cir.2000).

**2.** *Defendants' Motion for Summary Judgment* (Doc. 28) at Ex. 4. Unless otherwise indicated, all further citations to exhibits refer to Doc. 28.

**3.** The Plan is self-administered by the Santa Fe International Corporation.

**4.** Ex. 6, 1/10/02 Oliver Ltr.

**5.** SFIC is the holding company of the Santa Fe Engineering and Construction Company (Sante Fe), for whom Plaintiff began working in 1974. Until approximately 1989, Plaintiff worked for the Sante Fe Minerals (SFM) division of Santa Fe.

**6.** The 1985 Pension Plan was the controlling plan document when Bourgeois's SFM employment ended and he began his employment with SFX. (Ex. 1, Freede Aff. ¶ 5; Ex. 4, 8/16/01 Oliver Ltr.; Ex. 7, Bourgeois Dep. at 39–40, 54–56, 104–07; Ex. 9, 1985 Pension Plan; Ex. 20, Lewis Aff. ¶ 3).

**7.** Ex. 4, 8/16/01 Oliver Ltr.; Ex. 9, 1985 Pension Plan ¶¶ 1.18 and 3.01.

**8.** Ex. 9, 1985 Pension Plan ¶¶ 1.06, 1.12.

**9.** Doc. 28 at 11; Ex. 7, Bourgeois Dep. at 70, 104–05; Ex. 4, 8/16/01 Oliver Ltr.; Ex. 6, 1/10/02 Oliver Ltr.

**10.** *Plaintiff's Original Complaint* (Doc. 1) ¶ 2.2.

Court with any unified statement of why, precisely, he is entitled to this relief, his principal reasons appear to be the following: (1) he was never provided with a summary plan description ("SPD"), as required by 29 U.S.C. § 1022, and thus was not given notice of the fact that his years at SFIC would not be credited towards his pension; and (2) several statements by SFX and others led him to believe that he would be entitled to these benefits. These statements include the following: (a) a provision in his employment contract with SFX, dated 1995, which states that "Your statutory continuous service, for purposes of the Employment Protection (Consolidation) Act 1978, started on 06.06.74.";[11] (b) a 1994 letter by the chief executive officer of SFX which congratulates Bourgeois on twenty years of service[12]; and (c) several statements, beginning in 1996, made to Plaintiff by Nader Sultan, chairman of the board of the Kuwait Petroleum Corporation (KPC).[13] Defendants have moved for summary judgment, arguing that the Committee's denial of Bourgeois's claim was based on the legally correct interpretation of the Plan's terms and, alternatively, that Bourgeois cannot establish that the Committee abused its discretion.

## II. LEGAL STANDARD

■■■ Where, as here,[14] a benefit plan grants the plan administrator discretion to construe the plan's terms or make eligibility determinations, courts apply the abuse of discretion standard of review and analyze whether the plan administrator acted arbitrarily or capriciously. *Gosselink v.*

American Tel. & Tel. Inc., 272 F.3d 722, 726 (5th Cir.2001). In determining whether a plan administrator's decision to deny benefits is an "abuse of discretion," the Fifth Circuit applies a two-step analysis. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir.1998); *see also Gosselink*, 272 F.3d at 726. First, the court must determine whether the plan administrator's interpretation of the plan is the legally correct interpretation. *Tolson*, 141 F.3d at 608. If the plan administrator's interpretation of the plan is legally correct, the inquiry is over because no abuse of discretion could have occurred. *Id.* To decide whether an administrator's interpretation of a plan is legally correct, courts consider: (i) whether the administrator has given the plan a uniform construction; (ii) whether the interpretation is consistent with a fair reading of the plan; and (iii) any unanticipated costs resulting from different interpretations of the plan. *Gosselink*, 272 F.3d at 726. Second, if the court determines that the plan administrator's interpretation of the plan is not legally correct, then the court must decide whether the plan administrator's determination was an abuse of discretion. *Id.* In making this determination courts consider three nonexclusive factors that do not necessarily apply to every case: (i) the internal consistency of the plan under the administrator's interpretation; (ii) any relevant regulations formulated by the appropriate administrative agencies; and (iii) the factual background of the determination and any inferences of bad faith. *See Gosselink*, 272 F.3d at 726–727 (setting forth the factors

11. Ex. 12 ¶ 2.1.

12. Ex. 3 at 2 (an actual copy of this letter does not appear to be in the record: Plaintiff has referred the Court only to a reference to this letter which he made in his application to the Committee for pension benefits).

13. SFIC was a wholly-owned subsidiary of KPC until it merged with Global Marine to

form GSF in 1997. SFX was a wholly-owned subsidiary of KPC until it was sold in 1996.

14. Ex. 9, 1985 Pension Plan ¶¶ 1.05, 2.01, and 2.04; Ex. 11, 1996 Pension Plan ¶¶ 1.05, 2.01, and 2.04; Ex. 16, 1987 IS/PS Plan ¶¶ 1.01(i), 10.01, and 10.04; Ex. 15, 1996 IS/PS Plan ¶¶ 1.01(h), 10.01, and 10.04.

and determining that one of them was not applicable to the case the court reviewed). In particular, the existence of a conflict of interest "is a factor to be considered in determining whether the administrator abused its discretion in denying a claim." *Vega v. National Life Ins. Svcs.*, 188 F.3d 287, 297 (5th Cir.1999). The greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be. *Id.*

## III. ANALYSIS

### A. The Committee's Decision Was Legally Correct

■ The Committee's decision to deny Bourgeois's claim for benefits was based principally on the following interpretation and application of the Plan: (1) the terms of the Plan limit participation in it to "Employees"; [15] (2) the Plan defines "Employee" as "any person who is in the employ of the Company" and defines "Company" as "Santa Fe International Corporation and any corporation in which Santa Fe International Corporation owns or has owned an equity interest and which has adopted this Plan"; [16] and (3) SFIC neither owned nor had ever owned an equity interest in SFX, nor had SFX ever adopted the Plan.[17] As the Committee itself noted, the fact that SFX had never adopted the Plan is not in dispute.[18] Furthermore, there is simply no question that the Committee's interpretation of the elementary terms "Employee" and "Company," and their

consequent conclusion that as an employee of SFX Bourgeois was not a participant in the SFIC Plan, is legally correct. Indeed, Bourgeois has offered no challenge to that interpretation of the Plan's terms.

Accordingly, absent some extraordinary circumstance, the Committee was entitled to apply this interpretation of the Plan to Bourgeois's claim. Bourgeois presented essentially two circumstances to the Committee in the hopes of sustaining his claim: (1) he was never informed that his assignment to SFX would adversely affect his benefits under the SFIC Plan, in particular he was never given an SPD as required by law; [19] and (2) he was, in fact, informed that "his continuing benefits under the Santa Fe employee benefit plans were being assigned administratively to the SFX UK Ltd." [20] Without determining whether the Committee's reasoning evinces an abuse of discretion, the Court finds that the Committee's ultimate decision to reject these arguments was legally correct. Both of these claims by Bourgeois are essentially estoppel claims. Both claims must fail as a matter of law because Bourgeois, who was terminated from his employment at Santa Fe and not lured somehow into taking the job at SFX, cannot establish any detrimental reliance on any alleged statements or omissions by any SFIC or Plan agents.[21] Furthermore, the fact that, shortly after leaving SFIC and starting at SFX, Bourgeois stopped receiving statements from the SFIC Plan and began receiving statements from the SFX

---

15. Ex. 4, 8/16/01 Oliver Ltr.; Ex. 9, 1985 Pension Plan ¶¶ 1.18 and 3.01.

16. Ex. 9, 1985 Pension Plan ¶¶ 1.06, 1.12.

17. Doc. 28 at 11; Ex. 7, Bourgeois Dep. at 70, 104–05; Ex. 4, 8/16/01 Oliver Ltr.

18. Ex. 4, 8/16/01 Oliver Ltr.

19. Ex 3, 03/23/01 Claim Ltr. Administrators are required to provide SPDs to participants

under the terms set forth in 29 U.S.C. §§ 1022, 1024.

20. Ex 3, 03/23/01 Claim Ltr.

21. See *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir.1997) ("To recover benefits under an equitable estoppel theory, an ERISA beneficiary must establish a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances").

Plan demonstrates that, in addition, Bourgeois cannot demonstrate *reasonable* reliance on any alleged misrepresentations.[22] Indeed, that Bourgeois knew as early as 1990 that he was then enrolled in a different plan and that his prior years of service were no longer being credited toward his pension is not in dispute:

> Q:  Did you know that in 1990 you were no longer a member of the SFIC pension plan?
>
> A:  In 1990, well, I-in 1990 when I started receiving statements for the U.K. plan, it was obvious that I was no-no longer being a member of the U.S. plan.
>
> Q:  When you say U.K. plan, are you referring to SFX plan?
>
> A:  SFX.
>
> \*  \*  \*  \*  \*  \*
>
> Q:  So you understood in 1990 that you were no longer a member of the SFIC pension plan?
>
> A:  I was aware in 1990 that my pension benefits-the 16 years with SFIC was not being credited to me in the SFX pension plan.

Q:  You understood that you were also in a different plan in 1990 than the SFIC pension plan?

A:  Yes.

Q:  And you understood that you were now with the SFX plan in 1990?

A:  Yes.[23]

Accordingly, while the Committee's reasoning is flawed in certain (immaterial) respects [24] and while the Court agrees that "the evidence still suggests that Bourgeois received the runaround" in 1996 and 1997,[25] the Committee's interpretation of the Plan terms and its decision not to depart from that interpretation based on Bourgeois's estoppel arguments was correct as a matter of law.[26]

### B.  The Administrative Record

■ In reviewing an administrator's decision for abuse of discretion, courts are generally limited to reviewing the record that was before the committee.[27] Bourgeois argues that the administrative record in this case is unreliable because (1) it "was not identified until after the lawsuit was filed," (2) it was "designated by coun-

---

**22.**  See Ex. 7, Bourgeois Dep. at 62–66, 72–74, 107–108.

**23.**  *Id.* at 62–63.

**24.**  The Committee incorrectly assumed that Bourgeois was "not on a U.S. Dollar payroll during the period of his employment by SFX." Ex. 4, 8/16/01 Oliver Ltr. Under the terms of the Plan this would have been a second basis for finding that he was not an "Employee" and thus not a plan participant.  Ex. 9, 1985 Pension Plan ¶¶ 1.12.

**25.**  *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., et al.,* 215 F.3d 475, 478 n. 1 (5th Cir.2000).

**26.**  Bourgeois did not appeal the Committee's denial of his request for additional benefits under the IS/PS Plan, and accordingly any claim under the IS/PS Plan is not properly before the Court.  See Ex. 5, 10/15/01 Lopez

Ltr.; Ex. 6, 1/10/02 Oliver Ltr. Nevertheless, the 1987 IS/PS Plan, the document governing the IS/PS Plan when Bourgeois's SFM employment ended and be began his SFX employment, (i) *contains definitions nearly identical* to those in the 1985 Pension Plan and (ii) requires that an individual be an employee of a company that has adopted the IS/PS Plan to make or share in IS/PS Plan contributions. Ex. 1, Freede Aff. ¶ 6; Ex. 7, Bourgeois Dep. at 39–40, 54–56, 104–07; *compare* Ex. 9, 1985 Pension Plan ¶¶ 1.06, 1.12, 1.18, and 3.01 *with* Ex. 16, 1987 IS/PS Plan ¶¶ 1.01(n), 1.01(q), 1.01(x), and 2.01(a); *see also* Ex. 4, 8/16/01 Oliver Ltr. at 3, 6–7.  Accordingly, the Committee's interpretation of the IS/PS Plan is legally correct for the same reasons that its interpretation of the Pension Plan is legally correct.

**27.**  *See Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA,* 215 F.3d 516, 521 (5th Cir.2000).

sel for the plan," and (3) "no opportunity was given to Mr. Bourgeois to assure that the record was complete."[28] The first of these two reasons are irrelevant (or are misstatements by Plaintiff's counsel of what actually occurred) and the last is simply untrue.

The administrative record consists of "relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it."[29] It is true that counsel for the Plan designated what documents formed the administrative record, and that he did so after this lawsuit was filed.[30] That is *not* to say, however, that counsel for the Plan simply invented, after the fact, what evidence was and was not considered by the Committee. Counsel for the Plan identified the following as comprising the administrative record:

1. Bourgeois's September 1, 1998 deposition and its attached exhibits from the earlier proceedings in this Court (*Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., et al.*, No. H–98–0384).

2. Pension Plan for the Employees of the Santa Fe International Corporations, effective January 1, 1985.

3. Pension Plan for the Employees of the Santa Fe International Corporations, effective July 1, 1996.

4. Santa Fe Investment Savings & Profit Sharing Plan, effective July 1, 1996.

5. Santa Fe Investment Savings & Profit Sharing Plan, effective July 1, 1996.

6. Summary plan descriptions and benefits pamphlets for the plans.

7. Bourgeois's March 23, 2001 benefits claim (*i.e.*, David Lopez's letter to the Committee).

8. August 16, 2001 denial of Bourgeois's benefits claim (*i.e.*, James Oliver letter to David Lopez).

9. October 15, 2001 Bourgeois appeal of denial of benefits claim (*i.e.*, David Lopez's second letter to the Committee).

10. January 10, 2002 denial of Bourgeois's appeal (James Oliver letter to David Lopez).[31]

The Committee's denial letters reflect that these were the materials they considered in making their decision.[32] Furthermore, Frank Smith, the attorney who assisted the Committee with its review of Bourgeois's claim, specifically identifies these documents as constituting the administrative record.[33] As to Bourgeois's contention that he was given no opportunity to "assure that the record was complete," the record in this case demonstrates quite the opposite. At a September 4, 2002 scheduling conference before Magistrate Judge Stacy counsel for Bourgeois agreed in no uncertain terms that counsel for the Plan would "identify the record by October 31st" and that he would file any objections to the identification within twenty days.[34] Bour-

**28.** *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment* (Doc. 39) at 5, 9.

**29.** *Bratton*, 215 F.3d at 521.

**30.** *Defendants' Identification of Administrative Record* (Doc. 16); *Defendants' First Amended Identification of Administrative Record* (Doc. 20).

**31.** *Defendants' First Amended Identification of Administrative Record* (Doc. 20).

**32.** Ex, 4, 8/16/01 Oliver Ltr; Ex. 6, 1/10/02 Oliver Ltr.

**33.** Ex. 2, Smith Aff. ¶ 5.

**34.** See *Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment* (Doc 42) at 4 (quoting

geois never filed any timely objection to the Plan's identification of the record.[35] Finally, Bourgeois has not identified a single document that was inappropriately included or excluded from the identification made by counsel for the Plan. The Court finds that all of Bourgeois's objections to the administrative record in this case are without merit, and that the manner in which the administrative record was compiled was appropriate.[36] Finally, there is no need to compel further written discovery from Defendants, as Bourgeois suggests, as Plaintiff has made no showing of why the Court needs to consider any further information, in particular information outside of the administrative record,[37] before ruling on Defendants' motion.

## IV. CONCLUSION

The Committee's decision to deny Bourgeois's claim for benefits was legally correct. Furthermore, the record in this case demonstrates that Bourgeois cannot establish any reasonable or detrimental reliance on any alleged misrepresentations by Defendants, and that he therefore cannot establish an estoppel claim. Accordingly, the

Court orders that Defendants' motion for summary judgment is granted. All other pending motions are denied as moot.

relevant portions of transcript from scheduling conference).

35. While there appears to have been no agreement to allow the Plan to amend its identification of the administrative record, which it did on 26 February 2003, the Court notes that the only change made in the amended identification was the addition of the Santa Fe Investment Savings & Profit Sharing Plan, effective March 1, 1987. That the Committee considered this document in its review of Bourgeois's claim is obvious from its denial letter (Ex. 4), and this late addition to the list in no way prejudiced Bourgeois. Furthermore, counsel for Bourgeois failed to file any objection to this amended identification within twenty days of its filing, and thus was deemed under Local Rules 7.3 & 7.4 not to oppose it.

36. See *Barhan v. Ry–Ron, Inc.*, 121 F.3d 198, 202 (5th Cir.1997) (concluding that "the Plan

bore the initial burden of *informing the court* of the basis for its motion [for summary judgment] and identifying those portions of the pleadings, depositions, affidavits or other factual support that demonstrate that it did not abuse its discretion in rejecting the beneficiary's claim.") (emphasis added).

37. *Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir.2000) ("Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions"); *Vega v. National Life Ins. Sves.*, 188 F.3d 287, 300 (5th Cir.1999) (recognizing that "[a] long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator" and courts "may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination").