United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-30605
Summary Calendar

JOAN RUBEN GOODWIN,

Plaintiff-Appellant,

versus

LIBBEY GLASS, INC.; AETNA, INC.,

Defendants-Appellees.

Appeals from the Unites States District Court
for the Western District of Louisiana
(No. 5:03-CV-1353)

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Joan Goodwin, *pro se*, challenges the district court's grant of summary judgment in favor of

the defendants-appellees. We affirm.

## I. FACTS AND PROCEEDINGS

Starting in March 1981, Goodwin was employed by Libbey Glass, Inc., ("Libbey") at Libbey's

facility in Shreveport, Louisiana. As an hourly employee, Goodwin was covered by Libbey's Hourly

---

[*]Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

Employees Welfare Benefits Plan (the "Plan"). The Plan was underwritten by Aetna Life Insurance Co. ("Aetna").

In 1992, Goodwin sought short-term disability benefits under the Plan and filed a claim for workers' compensation for injuries incurred at the work site. To receive the short-term disability benefits, the Plan's terms required Goodwin to submit to Aetna an application for benefits and a physician's statement of disability. Goodwin complied with the application procedures and received short-term disability benefits. The benefits lasted twenty-six weeks and expired on January 12, 1994. In January 1994, Goodwin settled her pending workers' compensation claim and received payment in February 1994. While Goodwin's last day of actual work was June 23, 1993,[1] she was not terminated from Libbey's employment rolls until March 1, 1994.[2] Goodwin maintains that she maintained periodic contact with Libbey's human resources personnel in Shreveport, but provides no dates or specifics.

Sometime near September 2002, Goodwin contacted Libbey's office in Toledo, Ohio, for the first time and inquired about receiving permanent and total disability ("PTD") benefits. A benefits analyst with Libbey's Corporate Human Resources Office responded by letter on September 4, 2002, stating that, under the terms of the Plan, Goodwin was required to have submitted her request to

---

[1]The district court and Libbey identified the date as June 25, but the affidavit on which they rely identifies the date as June 23. Given the resolution of this appeal, the two-day discrepancy is immaterial.

[2]Goodwin was terminated, according to Libbey, because she was medically qualified for only light duty and no such positions were available. She did not challenge the circumstances surrounding her discharge before the district court.

Aetna within a set time[3] and that there was no record of any PTD status application on file with Aetna or Libbey's Shreveport office. As a result, the analyst informed Goodwin, she was not eligible for PTD benefits. In the letter, the analyst explained that Goodwin had the right to appeal the denial decision.

In October 2002, a manager of employee benefits for Libbey sent Goodwin a letter in response to her call requesting information on the procedure to appeal the denial of PTD benefits. The letter outlined the filing requirements for PTD status (including a specific correction of the analyst's error), pointed out that Goodwin had informed Libbey that she had no record of submitting any such application, and asked that Goodwin include any relevant documents she might have in her appeal. The letter also advised Goodwin of the appeal procedure.

In December 2002, Goodwin, through counsel, appealed the denial of PTD benefits. In her letter, Goodwin contended that she had "contacted members of the personnel department at [Libbey's] local facility at the time she became disable[d]" and that "[s]he was informed by them that they would process her claim and she would receive notification thereof." Goodwin further maintained that "she had never received anything in writing from [Libbey] or anyone associated with [Libbey]."

In March 2002, counsel to Libbey informed Goodwin that her appeal for PTD benefits had been denied because "Ms. Goodwin failed to timely file her application for permanent and total disability benefits with Aetna as required by [the Plan]." The letter included a copy of a benefits booklet that Goodwin had received during the course of her employment and identified the relevant

---

[3]The analyst erroneously indicated that the time period was two years. This error was corrected in later correspondence to reflect the twelve month period. Given the resolution of this appeal, the discrepancy is immaterial.

filing instructions.

On July 18, 2003, Goodwin filed a complaint in the Western District of Louisiana, asserting various rights under her employment contract. On August 11, 2003, Goodwin filed another pleading which the district court treated as an amended complaint. In her amended complaint, Goodwin styled her claim as one under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

On August 12, 2003, contending that Libbey had not answered the complaint, Goodwin moved for a default judgment. Default was entered, and the matter was referred to the magistrate judge. On August 21, 2003, Libbey appeared and moved to set aside the default. The motion was granted, and Libbey answered Goodwin's complaint. Later, Libbey filed a motion for summary judgment, contending that Goodwin did not make a timely application for PTD benefits under the Plan. The district court agreed and entered summary judgment in favor of Libbey. Goodwin appeals.[4]

## II.   STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo and applies the same standards as the district court. *See Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). Summary judgment is appropriate if the pleadings, affidavits, and other summary judgment evidence show that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Riverwood Int'l*, 420 F.3d at 382. For summary judgment, the initial burden falls on the

---

[4]On appeal, Goodwin asserts a variety of claims, many outside the scope of her complaint and beyond the issues presented to and considered by the district court. We limit our review to the question presented to the district court: Goodwin's entitlement to PTD benefits under the Plan.

movant to identify either "those portions of the record it believes demonstrate the absence of a genuine issue of material fact," *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005), or "an absence of evidence to support the nonmoving party's case," *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). If the movant does either, the burden shifts to the nonmovant to show, by more than mere allegation, the existence of a genuine fact issue for trial. *Reyna*, 401 F.3d at 349–50. At all times, "[a]ll evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant." *Id.* at 350.

## III. DISCUSSION

The issue before this court is whether Goodwin is entitled to recover PTD benefits. Libbey contends that Goodwin is not because she did not timely comply with the claim filing procedure set out in the Plan. Goodwin does not contest Libbey's reading of the Plan; rather, she maintains that she complied. We hold that she did not.

ERISA "sets certain minimum requirements for the claims procedures that plans are required to follow in processing benefits claims brought by participants and beneficiaries." *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 523 (5th Cir. 2000). A claim is not "filed" until "the requirements of a reasonable claim filing procedure of a plan have been met." *Id. See also* 29 C.F.R. § 2560.503-1(e) (providing "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims").[5] Goodwin does not assert that the claims procedures set out in the Plan are unreasonable or otherwise violate

---

[5]In the absence of a claim filing procedure in a plan, "a claim shall be deemed filed when a written or oral communication is made by the claimant . . . reasonably calculated . . . to bring the claim to the attention of the person or organizational unit which handles claims for benefits under the plan. . . ." *Estate of Bratton*, 215 F.3d at 523 (citing 29 C.F.R. § 2560.503-1(d) & (d)(3)).

ERISA or its implementing regulations. Accordingly, for her claim to be considered filed, she must have complied with the procedures set out in the Plan.

The Plan provides clear instructions on filing PTD benefits claims. Under the caption "How to File a Claim," the Plan provides:

> Your claim for permanent and total disability benefits must be filed with the insurance company within 12 months after you stop active work.
>
> In order to file a claim for permanent and total disability benefits, you must complete the appropriate claim form and furnish a Physician's Statement completed by your attending physician. These forms are available in your Personnel Department.
>
> The insurance company may request that you be examined by an independent physician of its choice, but at no cost to you. The decision as to whether you are permanently and totally disabled will be made by the insurance company and will be based on the nature and extent of your disability.

A Plan summary reiterates the basic requirements: "Aetna must receive written notice of claim at its Home Office within 12 months after you stop active work. Proof of the permanent and total disability must be received no later than 12 months after premium payments stop."

Goodwin maintains that the deadline to file her claim for PTD benefits was not March 1995 because she was unaware that she was discharged in March 1994. As Libbey points out, Goodwin offers no competent evidence in support of this position. By contrast, Libbey refers to Goodwin's deposition, in which she testified that she was aware in March 1994 that she no longer was working for Libbey. This evidence is corroborated by correspondence, which Goodwin admitted to receiving, that indicated that her employment had ended. Given the state of record evidence, the district court correctly concluded that Goodwin had until March 1995 to file for PTD benefits under the Plan.

With respect to filing her PTD benefits application, Goodwin asserts that she submitted a claim within the twelve months allotted in the Plan. However, at summary judgment, Goodwin produced no proof that she ever completed or submitted a written application for PTD benefits. She similarly failed to produce any evidence that she obtained or submitted a physician's statement of disability regarding PTD status. Finally, Goodwin submitted no evidence that any application packet was submitted to Aetna according to the terms of the Plan.

Again, by contrast, Libbey produced competent summary judgment evidence showing that there is no genuine factual issue that Goodwin failed to comply timely with the PTD benefits claim procedure set out in the Plan. Libbey's Human Resources Manager testified in an affidavit that a full search of Goodwin's insurance file, personnel file, and employment record produced no indication that Goodwin ever made a written application for PTD benefits to Libbey. Similarly, a Claims Manager for Aetna testified in an affidavit that, based on a thorough review of Goodwin's claims files and other relevant records, Aetna never received an application for PTD benefits on Goodwin's behalf.

Goodwin did produce some evidence, but none sufficient to demonstrate a genuine issue of material fact. For example, Goodwin provided various applications and physician's statements relating to her request for short-term disability benefits. However, those documents do not show that she made a claim for PTD benefits. To the contrary, her ability to produce evidence of compliance with the filing procedure for those claims makes her inability to demonstrate proper filing for the PTD benefits more stark.

In addition, Goodwin produced an affidavit from Marget Howard, who testified that Goodwin went to Libbey's Human Resources department and requested to be placed on light duty. When

Goodwin was told that no light duty positions were available, Howard recounts that she "personally heard [Goodwin] ask for her permanent total disability" benefits if no jobs were available to her. This evidence does not go far enough. Even taken as true with all positive inferences, Howard's statement that Goodwin orally requested PTD benefits from Libbey does not show that Goodwin submitted timely written notice of a claim or a physician's statement as required under the Plan.

Finally, Goodwin relies on an undated, unsigned notation on a worksheet that was attached to a letter to Goodwin from Libbey, which was dated September 23, 1998, and titled "VESTED PENSION BENEFITS." The letter was drafted in response to a telephone call by Goodwin to Libbey inquiring about her pension benefits. A benefits manager for Libbey signed the letter and attached various employment records, including the worksheet, in support of the letter's conclusion. The worksheet had been completed in March 1995 by a different Libbey employee. At the bottom of the worksheet, a hand-written notation provides "Aetna turned down her PTD request." Goodwin contends that this notation is enough to create a triable issue of whether she submitted a claim for PTD benefits. It is not.

The notation is undated and, as such, proves nothing about the timing of the filing of any claim. The notation was written in a different handwriting and with different color ink than the information entered by the Libbey employee on the worksheet. Moreover, the worksheet was created on March 23, 1995, which was more than a year after Goodwin's termination date. Indeed, Goodwin's reading of the notation does not comport with her version of events because she admitted in her deposition that Aetna never received an application. Further, she conceded in deposition that she had no documentary evidence of any correspondence relevant to her claim from 1994 to 2002. Even in the light most favorable to Goodwin, the notation does not create a genuine issue of fact.

In sum, Goodwin contends, without proof, that she timely filed her PTD benefits claim as provided for by the Plan.  Overwhelmingly, Libbey has shown just the opposite.  By reference to competent summary judgment evidence, Libbey has demonstrated a lack of genuine issues of material fact.  Because Goodwin did not file for PTD benefits in accordance with the Plan's terms, Libbey was entitled to a judgment as a matter of law.[6]

## IV.     CONCLUSION

Finding no error, we AFFIRM.

---

[6]Two additional issues warrant mention.  First, after default was entered, Libbey made an appearance and moved to have the default set aside.  The magistrate judge granted Libbey's motion. Starting from the understanding that default judgments are "'generally disfavored in the law' and thus 'should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement,'" we note that an order setting aside a default is reviewed for abuse of discretion. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).  Where, as here, Libbey responded quickly to the notice of default, Goodwin suffered no prejudice from the district court's setting aside the default judgment, and Libbey proffered a meritorious defense to the claim, there is no abuse of discretion. *See id*. at 292–94.

Second, Libbey's motion to strike portions of Goodwin's record excerpts is DENIED as moot.