**Melba J. MOLLER, Plaintiff–Appellant,**

v.

**EL CAMPO ALUMINUM COMPANY; El Campo Aluminum Company Hourly Pension Plan, Defendants–Appellees.**

No. 95–20913
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 1, 1996.

---

Cynthia L. Hooper Inglet, Houston, TX, Blair B. Brininger, Houston, TX, for plaintiff-appellant.

Jeffrey C. Londa, James Alfred Southerland, Ogletree, Deakins, Nash, Smoak & Stewart, Houston, TX, for defendants–appellees.

Before REAVLEY, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:

Melba J. Moller filed an ERISA[1] action in federal district court against her former employer and plan administrator, El Campo Aluminum Company (El Campo), and the El Campo Aluminum Company Hourly Pension Plan (Plan), asserting that the plan administrator wrongfully denied her retirement disability benefits under the Plan. The district court granted summary judgment for the defendants. Because relevant evidence was available but not provided to the doctor who ultimately decided that Moller was ineligible for benefits, we reverse and remand with instructions for the case to be remanded to the plan administrator for reconsideration with all of the relevant evidence.

## I. FACTS AND PROCEDURAL HISTORY

In October of 1988, Moller developed vertigo and ceased working at El Campo, where she had worked for about seventeen years. Moller applied for disability benefits from the Social Security Administration in 1989.

In February, 1990, Dr. Ronald E. Goelzer, M.D. determined that Moller's vertigo rendered her permanently disabled. Goelzer's opinion conflicted with the opinion of two doctors from the Department of Otolaryngology at Baylor College of Medicine, who believed that Moller could work in certain jobs without being a danger to herself or others.

In March, 1990, Moller applied for disability retirement benefits from the Plan. The Social Security Administration denied Moller disability benefits in April, 1990, and the administrative law judge upheld the decision after reviewing the medical records provided by Dr. Goelzer, the two doctors from the Department of Otolaryngology at the Baylor College of Medicine, and testimony from a vocational rehabilitation expert.

The plan administrator reviewed Dr. Goelzer's opinion and forwarded Moller's records to Dr. Warren, an employee of El Campo's parent company. In a memorandum dated June 12, 1990, Dr. Warren advised the Plan Administrator that the Social Security Administration had denied Moller's application and opined that Moller was ineligible for benefits under the Plan. The Plan then denied Moller disability retirement benefits.

On July 3, 1991, Moller appealed the denial of her disability retirement claim under the Plan. According to the Plan, appeals were to be resolved by a "Medical Board of Physicians, one appointed by the Company and

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

one appointed by the Employee." If those two disagreed, they were to select a third physician to be appointed to the medical board, and a majority of the board would decide the appeal.

Moller designated Dr. Goelzer as her physician on the medical board, and El Campo designated Dr. Warren. These physicians could not agree about Moller's eligibility for retirement benefits under the Plan, and they selected Dr. Bobby Alford of the Baylor College of Medicine as the third physician on the medical board. Dr. Alford's opinion would, in effect, determine Moller's eligibility for retirement benefits under the Plan.

In February 1992, Dr. Alford examined Moller. At that time, a series of tests were performed by Dr. Jenkins and other physicians at Baylor. Dr. Jenkins subsequently assumed Dr. Alford's role as the third physician on the medical board.

On May 4, 1993, Moller's attorney provided El Campo with a copy of the January 1993 decision by the Social Security Administration awarding Moller disability benefits. The Social Security Administration's reversal of its prior denial of benefits was based, in part, upon the testimony of Richard Ruppert, a vocational rehabilitation expert. The record reveals that neither El Campo nor Moller provided a copy of the 1993 Social Security Administration determination or a transcript of Ruppert's testimony to either Dr. Alford or Dr. Jenkins.

In response to the Social Security Administration's decision to award benefits to Moller, Richard Webb, an El Campo administrator, returned Moller's file to Dr. Warren for further review based on El Campo's general policy "to basically follow the Social Security determination unless there was strong reason to disagree with the decision." Webb noted that Tom Anderson, the El Campo personnel manager, disagreed with the Social Security Administration. Webb did not send notice of the award or the opinion supporting it to Dr. Jenkins.

On July 12, 1993, Dr. Jenkins issued his final report, concluding that Moller "is able to work at a stationary job in which she is not required to climb or do a lot of walking or operate heavy equipment without much difficulty. . . . I would not deem her as being totally incapacitated at this time." Dr. Warren concurred with this assessment on July 7, 1993. Because the majority of the medical board agreed that Moller was not permanently incapacitated, El Campo denied her claim in a letter dated October 18, 1993.

Moller then filed this suit, primarily claiming that El Campo breached its fiduciary duty when it failed to consider the 1993 Social Security Administration decision and the evidence underlying it, especially Ruppert's opinion, in the appeal process. Although Moller advanced a number of theories upon which relief could be based, the only relief she prayed for was a remand to the plan administrator for reconsideration of eligibility based on a record that includes both the 1993 Social Security benefit award and a March 1995 report by Ruppert. Because we agree that remand to the plan administrator is appropriate, we need not address Moller's theories individually.

## II. ANALYSIS

■ We review a district court's grant of summary judgment *de novo*. The relevant portion of ERISA states:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. We believe that Moller was denied a "full and fair review" when Dr. Jenkins reached his decision without readily available, relevant evidence before him.

It is clear that the Social Security Administration's disability decisions are relevant to El Campo's decisions regarding eligibility for retirement benefits under the Plan. This is

true despite the fact that the Plan's eligibility requirements are more restrictive than those of the Social Security Administration.[2] There is undisputed evidence that El Campo's general policy is to follow the decision of the Social Security Administration when determining eligibility for retirement benefits under the Plan.

Moreover, when El Campo denied Moller retirement benefits in 1990, it relied in part on the Social Security Administration's initial denial of disability benefits. When Dr. Warren wrote a memorandum advising El Campo to deny Moller retirement benefits in 1990, he noted that Moller "was denied Social Security disability benefits. This was sustained by the administrative law judge on April 30, 1990. It was his feeling that Melba was able to do many different kinds of work which would not endanger herself or others." Then, after quoting the definition of "permanently incapacitated" under the Plan, Warren stated: "Consequently, recognizing that Melba is capable of engaging in many occupations or employments, she, in my opinion, should be denied disability benefits [under the Plan] at this time."

Finally, in the denial letter sent from Tom Anderson, the personnel manager at El Campo, to Moller on June 20, 1990, Anderson stated:

> You applied for and have been denied Social Security Disability retirement benefits. The Administrative Law Judge, Forrest E. Stewart, denied your appeal on 4/30/90.

He stated, "Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform." Examples of such jobs are: catalog order clerk, desk clerk, dispatcher or alarm investigator.

> The evidence in your case indicates that you are able to engage in a number of occupations or employments for remuneration or profit. The Company, therefore, has concluded that your application for disability retirement must be denied.

In Anderson's denial letter, the excerpt from the Social Security Administration provides the only evidence that Moller is able to engage in a number of occupations. This is significant because in order to provide legally sufficient notice under ERISA, denial letters must state specifically the evidence upon which the denial is based.[3] El Campo's notice is legally sufficient, then, only if El Campo has accepted the Social Security Administration's factual findings and conclusions as its own.

Given El Campo's past reliance on the Social Security Administration's decisions, we cannot state with confidence that the Administration's reversal of its denial of benefits was irrelevant to the doctors on Moller's medical board. Nor can we say that this evidence is so weak as to render remand a

---

2. Under the Plan, an employee who "becomes permanently incapacitated shall be entitled to a disability pension upon his retirement...." An employee is "permanently incapacitated"

 (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit ... and
 (b) after such total disability has continued for a period of six (6) consecutive months, and it will be permanent and continuous during the remainder of his life....

The definition of "permanent incapacity" is stricter than the definition of "disability" under the Social Security Act (Act). The Act defines "disability" in part as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

3. The regulations promulgated by the Secretary under 29 U.S.C. § 1133 require that the initial notice of denial of benefits contain, *inter alia,* the specific reasons for the denial. 29 C.F.R. § 2560.503–1(f).

futile exercise.[4] In particular, Ruppert's experience in the employment field may be of some value to the doctors on the medical board. In short, a "full and fair review" of El Campo's initial denial of benefits required the medical board to consider the Social Security Administration's reversal of its own decision to deny benefits. Remand is therefore appropriate for the medical board to consider this new evidence. Of course, we express no opinion about the weight, if any, the doctors on the medical board should give this new evidence.

Another question is a bother: what is this case doing here? It should never have made its way into district court, much less into the Fifth Circuit. Both sides should have seen to it that the doctors on the medical board had all of the available evidence before them. And once it was known that relevant evidence had not been given to the doctors, the evidence should have been supplied to them for redetermination and the lawsuit dropped. The judiciary's scarce resources should not be wasted on problems the parties could have, and should have, taken care of themselves.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to REMAND the case to the plan administrator for reconsideration of Moller's eligibility for retirement benefits with the Social Security Administration's 1993 decision and Ruppert's 1995 report before them.

REVERSED AND REMANDED.

---

**4.** *See, e.g., Miller v. United Welfare Fund,* 72 F.3d 1066, 1071–72 (2d Cir.1995) (remand for the plan administrator to consider new evidence is appropriate unless it would be a useless formali-ty); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 828 (7th Cir.1980) (same).