IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30439
Summary Calendar
_____

HARRY D. HORTON, JR.,

Plaintiff-Appellee,

versus

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA, ET AL.,

Defendants,

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA; HEALTH INTERNATIONAL OF
DELAWARE, INC.; XEROX CORPORATION,

Defendant-Appellant.

_____

HARRY HORTON, JR.,

Plaintiff-Appellee,

versus

XEROX CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court for

_____

October 8, 2002

Before REAVLEY, SMITH and STEWART, Circuit Judges.

PER CURIAM:[*]

Xerox Corp., Prudential Insurance Co. of America, and Health International of Delaware, Inc. (HI) appeal the district court's summary judgment holding that appellee Harry Horton, Jr. was entitled to additional disability benefits under Xerox's long-term disability plan. We reverse and render.

## BACKGROUND

Horton was a Xerox employee. The long-term disability plan in issue (the plan) is an employee benefit plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

Horton injured his back and received short-term disability benefits and some long-term benefits from Xerox. For the disability period in issue, the plan provides long-term benefits for disability defined as "the inability to be employed in any substantial and gainful work either inside or outside of Xerox because of personal impairment caused by Injury or Illness, occupational or non-occupational."

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

HI serves as the Medical Case Manager under the plan and in this capacity serves as the plan administrator who determines whether employees are entitled to disability benefits. Prudential assists in processing disability benefits. There is no dispute that Xerox pays long-term disability benefits from its own assets, and that the plan grants discretion to HI to construe the terms of the plan and determine eligibility for benefits.

In September 1999, HI determined that Horton was not entitled to further disability benefits. Horton appealed this decision and an independent board-certified orthopedic specialist, Dr. Halliday, reviewed the record and denied the appeal.

As an ERISA plan participant Horton sought disability benefits through this suit in federal court. Section 502(a)(1)(B) of ERISA authorizes a civil action by an ERISA plan participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

The district court entertained cross-motions for summary judgment, and concluded that HI as plan administrator had abused its discretion in denying Horton long-term disability benefits. The court entered a judgment to this effect, and this appeal followed.

DISCUSSION

Where the plan administrator is vested with discretionary authority to determine eligibility for benefits, its denial of benefits is reviewed for abuse of discretion. Threadgill v. Prudential Sec. Group, Inc., 145 F.3d 286, 292 (5th Cir. 1998). More specifically, where the administrator has such discretionary authority, we review the administrator's interpretation of the terms of the plan for abuse of discretion. See Rhorer

3

v. Raytheon Eng'rs & Constructors, Inc., 181 F.3d 634, 639-40 (5th Cir. 1999). The administrator's factual determinations relating to plan benefits are reviewed under the abuse of discretion standard as well. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 597-98 (5th Cir. 1994); Pierre v. Conn. Gen. Life Ins. Co., 932 F.2d 1552, 1562 (5th Cir. 1991).

Under the abuse of discretion standard, "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment." Id. In applying this standard of review, we consider whether the administrator acted arbitrarily or capriciously. Dowden v. Blue Cross & Blue Shield of Tex., Inc., 126 F.3d 641, 644 (5th Cir. 1997). We have stated that "[a]n arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828 (5th Cir. 1996)). Ultimately, our review for abuse of discretion "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (en banc). Even under deferential abuse of discretion review, however,

> we will not countenance a denial of a claim solely because an administrator suspects something may be awry. Although we owe deference to an administrator's reasoned decision, we owe no deference to the administrator's unsupported suspicions. Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.

Id. at 302.

We review de novo the district court's decision that the plan administrator abused its discretion. Threadgill, 145 F.3d at 292. Conducting such a review, we cannot say that the plan administrator abused its discretion in denying Horton's request for additional long-term disability benefits.

At the outset, we note that we need not view HI's exercise of discretion with special skepticism on grounds that it had a direct financial incentive to deny the claim. Where the administrator operates under a conflict of interest, that conflict does not alter the abuse of discretion standard of review, but is a factor to be considered in deciding whether the plan administrator abused its discretion. See Vega, 188 F.3d at 297. While insurance companies with a direct financial interest in the benefit determination sometime serve as ERISA plan administrators, HI did not pay disability claims itself. As explained above, Xerox has a self-funded plan and pays such claims from its own assets.

We also note undisputed evidence that HI's practice as plan administrator is to deny long-term benefits if board certified physicians determine that a plan participant is capable of performing light duty or sedentary work, either at Xerox or elsewhere. This approach is consistent with the plain terms of the plan, quoted above. The administrator did not abuse its discretion in interpreting the plan document.

Likewise, we cannot say that the administrator abused its discretion in its factual determination that Horton was not disabled under the plan's definition of disability. The administrative record contains physician opinions, duly obtained under HI's policy of

5

relying on such opinions, and concluding that Horton was not disabled under the plan. We cannot say that the record demonstrates that the plan administrator acted in an arbitrary and capricious manner or otherwise abused its discretion in relying on these opinions in denying Horton's claim. Briefly, Dr. Ioppolo, a neurosurgeon, examined Horton on two occasions. He concluded in August 1998 that "I certainly would not see any reason why the patient can not return to a light duty job" that did not require extensive driving and heavy lifting. Dr. Ioppolo concluded in January 1999 that "[i]t would be my feeling still that this patient is capable of gainful employment, perhaps best at a light duty capacity." Another neurosurgeon, Dr. Perone, also examined Horton and concluded in August 1999 that "I do not think he is permanently disabled from all employment." By all indications in the record these examinations were objective and reasonably thorough, and were conducted by qualified physicians with the appropriate expertise.

The district court noted that Horton's treating physician, Dr. Williams, wrote a letter dated October 13, 1990, stating that "[b]ased on Mr. Horton's prior job description, I feel he is permanently disabled from performing those tasks or any significant employment." We note that Dr. Williams authored numerous reports in the administrative file which are not entirely consistent. For example, one report has a box checked indicating that Horton is capable of light work, another states that he is totally incapacitated, and others state that he is capable of "light duty work with extreme restrictions." Regardless, the plan administrator was not required to accept the opinion of

6

Dr. Williams over the opinions of the other physicians described above. We have not adopted a "treating physician rule" requiring the administrator to accept the opinion of a treating physician. See Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1016 (5th Cir. 1992).

The district court also noted that, after the administrator made its initial denial and denied Horton's appeal, the Social Security Administration determined that Horton was entitled to disability benefits under federal social security law. However, this determination was not before the administrator and the district court should have confined itself to the administrative record. The district court should limit itself to the administrative record in assessing whether a plan participant was as a factual matter disabled. Vega, 188 F.3d at 289, 299-300. Exceptions to this rule recognized in Vega are not relevant. The only exceptions we recognized that allow the district court to consider evidence outside the administrative record are expert medical opinions that assist the court in understanding medical terminology or practice, and evidence related to how the administrator has interpreted the plan in other instances. Id. at 299. The social security determination falls under neither exception. Second, while an ERISA plan administrator might find a social security disability determination relevant or persuasive, see Moller v. El Campo Aluminum Co., 97 F.3d 85, 87 (5th Cir. 1996), the plan administrator is not bound by the social security determination.

In short, we cannot say that the administrator abused its discretion in denying long-term disability benefits to Horton under the plan. The district court erred in holding

otherwise. The judgment of the district court is reversed and a take-nothing judgment is hereby rendered in favor of appellees.

REVERSED and RENDERED.