Ronnie ABATE, Plaintiff,

v.

The HARTFORD, Equiva Services, LLC, and Equiva Services Long Term Disability Plan, Defendants.

Civil Action No. 1:05–CV–690.

United States District Court, E.D. Texas.

July 27, 2006.

John Gerard Werner, Reaud Morgan & Quinn LLP, Beaumont, TX, for Plaintiff.

Lisa Kim Basinger, Wilson Grosenheider Morre & Jacobs, Austin, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Defendant The Hartford's ("Hartford") Motion for Summary Judgment (# 46) and Motion to Strike Plaintiff's Summary Judgment Evidence ("Motion to Strike") (# 49) as well as Plaintiff Ronnie Abate's ("Abate") Motion for Summary Judgment (# 47) and Motions to Supplement the Administrative Record (# 43–# 45). Hartford moves for summary judgment on Abate's claim that its decision to terminate payment of his long term disability benefits constituted an abuse of discretion. Abate also seeks

summary judgment on his claim that Hartford abused its discretion in terminating his benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Hartford's Motion for Summary Judgment should be denied, Hartford's Motion to Strike should be denied, Abate's Motions to Supplement the Administrative Record should be granted, and Abate's Motion for Summary Judgment should be denied as premature in light of the remand of this case to the plan administrator.

## I. *Background*

Abate, age fifty-eight, worked as a pipe fitter/machinist for approximately thirty-five years. Through his employment with Equiva Services, LLC ("Equiva"), Abate participated in the Equiva Services Long Term Disability Plan ("LTD Plan"). The LTD Plan, which qualifies as an "employee welfare benefit plan" subject to ERISA, is administered by Hartford.

While in the course and scope of his employment as a mechanic for Equiva, Abate sustained a posterior medial meniscus tear of the left knee. He filed a claim for long term disability benefits under the LTD Plan in May 2003. From approximately June 4, 2003, through June 3, 2005, Abate was deemed disabled pursuant to the "Your Job" provision of the plan's group insurance policy and received benefits. Specifically, the policy language defining "disabled" during the initial twenty-four month period states that the plan participant must be prevented by accidental bodily injury "from performing one or more of the Essential Duties of Your Own Job or a reasonable alternative offered to you by the Employer, and as a result your

Current Monthly Earnings are less than 100% of your Indexed Pre–Disability Earnings."

Hartford terminated Abate's disability benefits in June 2005 as the result of Hartford's utilization of an alternative definition of disabled, which applies after the initial twenty-four month period expires. In order to continue receiving benefits under the alternative definition, a participant must be "prevented from performing one or more of the Essential Duties of Any Job." "Any Job" is defined in the policy as "a job for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of 60% of your Indexed Pre-disability Earnings and the Maximum Monthly Benefit shown in the Schedule of Insurance." In reaching its determination that Abate did not qualify as disabled under the "Any Job" definition, Hartford conducted an Employability Analysis ("EA"). The EA identified three occupations for which Abate was qualified and which had an earnings potential ranging from 62% to 74% of his pre-disability earnings. These occupations were belt repairer, tool repairer, and repairer of hand tools.

As part of the EA, Hartford utilized the Occupational Access System ("OASYS"), a computerized job matching program, to evaluate Abate's capabilities. This program, which analyzes an employee's knowledge, assets, and skills in relation to attaining a job with an earnings potential of at least 60% of the employee's previous salary, requires manual transcription of the employee's relevant information by a rehabilitation case manager ("case manager"). Plaintiff contends that OASYS is a flawed system which produces inaccurate evaluations. Abate alleges that when his case manager, Charysse Chapman–Black ("Chapman–Black"), was inputting his

data, she overlooked relevant information and failed to utilize the medical history and records that were available to her. Moreover, Abate asserts that OASYS treated any category receiving the default entry of "Unknown" as though it contained an entry of "Frequently." The "Frequently" code purportedly means that the employee is more than able to perform the given task.

In the instant action, Plaintiff alleges that Chapman–Black discounted the impact of his carpal tunnel syndrome on his job capabilities when entering his information into the data system. Specifically, Abate contends that OASYS interpreted Chapman–Black's entry of "Unknown" for the categories of reaching, handling, and fingering to mean that Abate was more than able to perform these particular skills, when, in reality, such tasks were difficult for him to perform due to his carpal tunnel syndrome. According to Plaintiff, a proper input of Abate's data would have prevented him from meeting the standards for belt repairer, tool repairer, and repairer of hand tools, the only three job titles proposed by Hartford for Abate which meet the potential earnings criteria. Therefore, Abate claims that a correct entry of his information into OASYS would have excluded him from any of the jobs that meet the 60% benchmark, thus qualifying him for long term disability benefits.

In a letter to Hartford dated June 6, 2005, Abate appealed the termination of his disability benefits. On July 27, 2005, Hartford upheld its previous decision to terminate Abate's long term disability benefits under the "Any Job" provision of the policy. In response to the termination of his benefits, Abate secured counsel in August 2005. Abate subsequently retained Dr. Carl Hansen ("Dr.Hansen"), a specialist in vocational evaluation, to conduct an analysis of his earning capacity. In his report, dated September 12, 2005, Dr. Hansen concluded that Abate "did not have the capacity as based on the adopted methodology in the field of vocational rehabilitation to return to employment at the wage level of 60% of his former wage earning ability."

On September 14, 2005, Dr. Hansen's evaluation of Abate was sent to Hartford. Hartford, however, returned the documents to Abate's attorney, stating that "the administrative remedies provided by ERISA and the plan have been exhausted. There are no provisions for additional appeals or re-opening the administrative record after a final appeal determination. Therefore, we are returning the additional information submitted."

Abate filed suit in this court against Hartford, Equiva, and the LTD Plan on October 21, 2005, alleging Hartford abused its discretion in administering the benefits plan. Hartford filed a Motion to Dismiss and an Original Answer on November 21, 2005, asserting that the termination of Abate's long term disability benefits was not arbitrary and capricious and did not constitute an abuse of discretion. On December 20, 2005, Abate filed his Amended Complaint, contending that Hartford's denial of his claim, both in June 2005 and September 2005, constituted an abuse of discretion. Equiva and the LTD Plan were voluntarily dismissed from this case on February 14, 2006. Hartford's Third Amended Answer was deemed filed on May 17, 2006.

Between May 31, 2006, and June 1, 2006, Abate filed a Motion, Amended Motion, and Second Amended Motion to Supplement the Administrative Record and an Objection to Defendant's Submission of Administrative Record. In these motions, Abate objects to Hartford's submission of the administrative record on the ground

that it fails to include the report of Dr. Hansen. Hartford, in its response, states that Dr. Hansen's report was not part of the administrative record before Hartford when it made its final decision on July 27, 2005, to uphold the termination of benefits under the "Any Job" provision of the policy. Therefore, Hartford contends that Dr. Hansen's report should be excluded from this court's review of the case. Hartford, in its Motion to Strike, filed June 9, 2006, requests that Plaintiff's Exhibits E and F be stricken as summary judgment evidence. On June 1, 2006, Abate and Hartford each filed motions for summary judgment. Abate requests that Hartford provide him with long term disability benefits retroactive to the termination date of June 4, 2005, or in the alternative, that the case be remanded to Hartford for consideration of Dr. Hansen's report. Hartford, on the other hand, seeks dismissal of the lawsuit and any further relief.

## II. *Analysis*

### A. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006); *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 454 (5th Cir.2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.,* 438 F.3d 519, 523 (5th Cir.2006); *Cooper Tire & Rubber Co.,* 423 F.3d at 454; *Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon

mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir.2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir.2003); *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 505 (1999). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir.2005). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir.2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Shields v. Twiss*, 389 F.3d 142, 150

(5th Cir.2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir.2002). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999); *accord Boudreaux*, 402 F.3d at 540; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N. Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted); *see Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for

summary judgment." *Brown,* 337 F.3d at 541; *see Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 332 (5th Cir.2004); *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir.2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *EMCASCO Ins. Co.,* 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.,* 429 F.3d 108, 110 (5th Cir.2005); *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir.2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

 As provided for in subdivisions (a) and (b) of Rule 56 of the Federal Rules of Civil Procedure, any party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See* Fed.R.Civ.P. 56(a)-(b). On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *See White Buffalo Ventures, LLC v. University of Tex. at Austin,* 420 F.3d 366, 370 (5th Cir.2005); *Ford Motor Co. v. Texas Dep't of Transp.,* 264 F.3d 493, 498 (5th Cir.2001). Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law. *See Joplin v. Bias,* 631 F.2d 1235, 1237 (5th Cir.1980); *Bricklayers, Masons, & Plasterers Int'l Union of Am. v. Stuart Plastering Co.,* 512 F.2d 1017, 1023 (5th Cir.1975). The rationale for this rule is that each party may move for summary judgment using different legal theories that rely upon different sets of material facts. *See id.* Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. *See* Fed.R.Civ.P. 56(c); *see also Bricklayers, Masons, & Plasterers Int'l Union of Am.,* 512 F.2d at 1023.

B. *The Administrative Record and Evidentiary Issues*

Abate requests that the vocational analysis performed by Dr. Hansen be included as part of the administrative record because the evaluation was provided to Hartford prior to the filing of this lawsuit. Hartford contends that Dr. Hansen's report was presented to it after Abate's appeal was final, and, therefore, the report does not constitute part of the administrative record in this case.

 Generally, a plaintiff suing under ERISA is limited to the administrative record that was before the plan administrator. *See Vega v. National Life Ins. Servs., Inc.,* 188 F.3d 287, 299 (5th Cir. 1999). The administrative record consists of the "relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300; *accord Estate of Bratton v. National Union Fire Ins. Co.,* 215 F.3d 516, 521 (5th Cir.2000); *see also Gooden v. Provident Life & Accident Ins. Co.,* 250 F.3d 329, 333

(5th Cir.2001). In most situations, a court must exclude from its consideration any material not contained in the administrative record. *See id.; Estate of Bratton,* 215 F.3d at 521; *Vega,* 188 F.3d at 300. Nevertheless, before filing suit, a plaintiff "can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it." *Id.; accord Estate of Bratton,* 215 F.3d at 521 n. 5. In fact, there is not "a particularly high bar to a party's seeking to introduce evidence into the administrative record." *Vega,* 188 F.3d at 300.

According to the United States Court of Appeals for the Fifth Circuit, its "motivating concern" in limiting the district court's review to the administrative record that was before the plan administrator is to "encourage the parties to resolve their dispute at the administrator's level." *Id.; see Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 393 (5th Cir.2006); *Harris v. J.B. Hunt Transp., Inc.,* 423 F.Supp.2d 595, 599 (E.D.Tex.2005). The court explained that if a claimant believes that the district court is a better forum to present his evidence and the court allows him to do so, the administrator's review of claims will be circumvented. *See Vega,* 188 F.3d at 300; *Harris,* 423 F.Supp.2d at 599. Therefore, "[i]f the claimant submits additional information to the administrator ... and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record." *Vega,* 188 F.3d at 300 (citing *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 634–35 (5th Cir.1992)).

 The Fifth Circuit has also crafted "certain limited exceptions" under which a district court can look beyond the administrative record. *Estate of Bratton,* 215 F.3d at 521; *see Robinson,* 443 F.3d at 395

n. 3. Courts may admit evidence related to how an administrator has interpreted terms of the plan in other instances as well as evidence, including expert opinion, that assists the court in understanding the medical terminology or practice related to a claim. *See Estate of Bratton,* 215 F.3d at 521; *see also Wildbur,* 974 F.2d at 638. No exception arises, however, simply because a conflict of interest is present; even when a conflict of interest exists and is documented, the court remains limited to the administrative record available before the plaintiff filed suit. *See Gooden,* 250 F.3d at 333; *Vega,* 188 F.3d at 300. Accordingly, aside from the exceptions set forth above, evidence outside the administrative record cannot be utilized to demonstrate that an administrator acted in a biased, partial, or unreasonable manner. *See Gooden,* 250 F.3d at 333; *see also Harris,* 423 F.Supp.2d at 599 n. 7; *Staas v. TXU Corp.,* Civil Action No. 9:04–CV–12, slip op. at 3–4 (E.D.Tex. Sept. 29, 2004).

 In the instant action, Abate is entitled to supplement the administrative record with Dr. Hansen's report because it is relevant to Abate's claim for long term disability benefits, it was submitted to the plan administrator prior to the commencement of legal proceedings, and Hartford was afforded the opportunity to review the report well before suit was filed. Had Dr. Hansen's evaluation been included as part of the administrative record, the Hartford case manager would have had additional documentation available to her regarding Abate's medical conditions, including references to his heart condition, reflux disorder, diabetes, carpal tunnel syndrome, torn rotator cuff, and sinus problems. Instead of entering "Unknown" into OASYS, the case manager could have relied upon this information as well as Dr. Hansen's evaluation to describe Abate's capabilities more

accurately. Accordingly, in light of the fact that the vocational analysis is relevant and that Hartford was given ample opportunity to consider the analysis prior to the institution of this action, Abate's Motions to Supplement the Administrative Record with Dr. Hansen's report are granted.

 The court also finds that the admission of portions of Chapman–Black's deposition is warranted. As noted above, the district court may look beyond the administrative record and allow the "admission of evidence related to how an administrator has interpreted terms of the plan in other instances." *Estate of Bratton*, 215 F.3d at 521 (citing *Vega*, 188 F.3d at 299). Chapman–Black's testimony at deposition explains how the OASYS data system is utilized by Hartford in determining the meaning of and compliance with policy terms as well as how the OASYS data system interprets a coding of "Unknown" in generating its results. Chapman–Black's deposition is material to the court's understanding of "Any Job," which is defined in the policy as "a job for which you are qualified by education, training or experience." Her deposition testimony also provides information pertaining to how Hartford uses OASYS to determine whether "Any Job" exists based on the data provided about the employee. Accordingly, Hartford's Motion to Strike is denied, and Plaintiff's Exhibits E and F are included as proper summary judgment evidence.

## C. ERISA Standard of Review

Under ERISA, when an employee benefit plan gives its administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court must evaluate the plan administrator's decision under an abuse of discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 269 (5th Cir.2004), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2941, 162 L.Ed.2d 867 (2005); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir.2004); *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir.2002); *Aboul–Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir.2001). "[D]istrict courts in the Fifth Circuit review under an abuse of discretion standard a plan administrator's factual determinations...." *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994); *see also Lain*, 279 F.3d at 342; *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

 Here, the plan provides the administrator discretionary authority to interpret the policy and make benefit determinations: "We [Hartford] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Because the plan expressly gives Hartford discretionary authority to determine all questions of eligibility and status, the abuse of discretion standard of review applies. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948.

 When an administrator acts under a conflict of interest, however, a court should be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." *Vega*, 188 F.3d at 299. A " 'sliding scale' is applied to the abuse of discretion standard where it is determined that the administrator has acted under a conflict of interest." *Lain*, 279 F.3d at 343 (quoting *Vega*, 188 F.3d at 296). " 'The greater the evidence of conflict on the part of the administrator, the

less deferential [the court's] abuse of discretion standard will be.'" *Id.* (quoting *Vega*, 188 F.3d at 297); *see Robinson*, 443 F.3d at 395. Fifth Circuit cases "that have found an apparent conflict of interest are ones in which a claim was denied by an insurance company that did not employ the claimant, but instead was contractually obligated to make payments under the employer's plan." *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 479 n. 8 (5th Cir.2003), *cert. denied*, 541 U.S. 1072, 124 S.Ct. 2413, 158 L.Ed.2d 981 (2004). Where, as here, a plaintiff offers no evidence other than an administrator/insurer's dual role, "it is appropriate to review the administrator's decision with only a modicum less deference than the court otherwise would." *Vega*, 188 F.3d at 301; *see Robinson*, 443 F.3d at 395.

### D. *Evaluation of Hartford's Denial of Benefits*

In the case at bar, Hartford, the designated plan administrator, made a factual determination that Abate was qualified to hold one of the three jobs generated by OASYS, which meet the earnings requirement, and, accordingly, his long term benefits should be terminated on the ground that he was not disabled. Abate argues that Hartford acted arbitrarily and capriciously in terminating his benefits by failing to review Dr. Hansen's report and by relying upon the flawed OASYS test results. Such factual determinations by Hartford, as discussed above, are reviewed by courts in the Fifth Circuit under an abuse of discretion standard. *See Sweatman*, 39 F.3d at 598; *see also Lain*, 279 F.3d at 342; *Meditrust Fin. Servs. Corp.*, 168 F.3d at 213.

The application of the abuse of discretion standard entails a two-step process. *See Wildbur*, 974 F.2d at 637. Initially, " 'the court must determine the

[legally] correct interpretation of the Plan's provisions.'" *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1337 (5th Cir.1994) (quoting *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 444 (5th Cir.1989)); *see Lain*, 279 F.3d at 344; *Aboul–Fetouh*, 245 F.3d at 472; *Whittaker v. BellSouth Telecomms., Inc.*, 206 F.3d 532, 535 (5th Cir.2000); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir.1998). If the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *See Aboul–Fetouh*, 245 F.3d at 472; *Whittaker*, 206 F.3d at 535; *Haubold*, 11 F.3d at 1337.

In determining the legally correct interpretation of a benefit plan, the court must consider: (1) whether the administrator's interpretation is consistent with a fair reading of the plan; (2) whether the administrator has given the plan a uniform construction; and (3) whether the interpretation results in any unanticipated costs to the plan. *See Ellis*, 394 F.3d at 270; *Lain*, 279 F.3d at 344; *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union*, 47 F.3d 139, 145 (5th Cir.1995); *see also Whittaker*, 206 F.3d at 535; *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 640 n. 7 (5th Cir.1999); *Haubold*, 11 F.3d at 1337. "If the administrator has applied a legally correct interpretation of the Plan, then no further inquiry is required." *Kolodzaike v. Occidental Chem. Corp.*, 88 F.Supp.2d 745, 747 (S.D.Tex. 2000); *see Aboul–Fetouh*, 245 F.3d at 472; *Tolson*, 141 F.3d at 608; *Shelton v. Benefit Plan of Exxon Corp.*, 8 F.Supp.2d 616, 620 (S.D.Tex.1998), *cert. denied*, 528 U.S. 1136, 120 S.Ct. 978, 145 L.Ed.2d 929 (2000) (citing *Chevron Chem. Co.*, 47 F.3d at 146; *Haubold*, 11 F.3d at 1341). In other words, "[i]nasmuch as the administrator

made the legally correct interpretation, [the court is] not compelled to proceed to ... determine whether the administrator's denial of benefits was an abuse of discretion because under a correct interpretation 'no abuse of discretion could have occurred.' " *Tolson,* 141 F.3d at 609 (quoting *Spacek v. Maritime Ass'n, ILA Pension Plan,* 134 F.3d 283, 292 (5th Cir.1998); *Wildbur,* 974 F.2d at 637–38).

 Here, there is no indication that the administrator has given the plan a non-uniform construction, as there is no competent summary judgment evidence that the administrator has treated similarly situated employees' claims differently. Furthermore, there is no suggestion that the administrator's decision results in any unanticipated costs to the plan. Therefore, the crucial issue for the court to determine is whether the administrator's interpretation of the plan is fair and reasonable. *See Lain,* 279 F.3d at 344. The interpretation of an ERISA plan is governed by federal common law. *See Provident Life & Accident Ins. Co. v. Sharpless,* 364 F.3d 634, 641 (5th Cir.2004); *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1452 (5th Cir.1995). In construing ERISA plan provisions, the court interprets the "contract language 'in an ordinary and popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning if there is one." *Transitional Learning Cmty. at Galveston, Inc. v. United States Office of Pers. Mgmt.,* 220 F.3d 427, 431 (5th Cir.2000) (quoting *Todd,* 47 F.3d at 1451 n. 1).

A review of the plan in this case demonstrates that it is straightforward in its language. The policy states:

Under the policy, "Disability" or "Disabled" is defined to mean that:

(1) during the Elimination Period; and

(2) for the next 24 months, you are prevented by:

(a) accidental bodily injury;

(b) sickness;

(c) Mental Illness;

(d) Substance Abuse; or

(e) pregnancy,

from performing one or more of the Essential Duties of Your Own Job or a reasonable alternative offered to you by the Employer, and as a result your Current Monthly Earnings are less than 100% of your Indexed Pre–Disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Job.

"Reasonable alternative" means a job position with the Employer, in the same general location, the Essential Duties of which you are able to perform, and which consider your prior education, training and experience, and with a rate of pay greater than 60 % of your Indexed Pre-disability Earnings.

\* \* \* \* \* \*

"Any Job" means a job for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of 60% of your Indexed Pre-disability Earnings and the Maximum Monthly Benefit shown in the Schedule of Insurance.

The "Your Job" provision of the policy includes a "reasonable alternative" option pursuant to which a claimant is deemed disabled if, in addition to meeting the earnings requirement, he is unable to perform the essential duties of a "reasonable alternative" offered to him by his employer. "Reasonable alternative" is defined in the policy as a job position with the employer "in the same general location...." Unlike the "Your Job" provision, which includes

the reasonable alternative option, the "Any Job" provision does not contain language which adds a geographic limitation for purposes of determining whether a job position for the claimant exists. Accordingly, Abate's allegations that Hartford failed to tailor its analysis to reflect the Beaumont/Port Arthur area's high unemployment rate and limited job market is unavailing in light of the fact that there are no geographical restrictions attached to the "Any Job" definition.

Initially, Abate was deemed disabled, and in accordance with the "Your Job" provision, he received benefits during the first twenty-four month period. After the twenty-four month period expired, Hartford determined that Abate was no longer disabled using the "Any Job" provision. In reaching this decision, however, Hartford did not consider Dr. Hansen's evaluation and relied on the OASYS analysis, which did not acknowledge all the limitations imposed by Abate's carpal tunnel syndrome.

When applying the abuse of discretion standard, the court "analyzes whether the plan administrator acted arbitrarily and capriciously." *Sweatman*, 39 F.3d at 601 (quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)); *see Meditrust Fin. Servs. Corp.*, 168 F.3d at 215; *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 829 (5th Cir.1996). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Meditrust Fin. Servs. Corp.*, 168 F.3d at 215 (quoting *Bellaire Gen. Hosp.*, 97 F.3d at 828–29); *see Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 644 (5th Cir.1997).

An administrator's decision to deny benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *Vega*, 188 F.3d at 299. "Assuming that both parties were given an opportunity to present facts to the administrator, [the court's] review of factual determinations is confined to the record available to the administrator." *Meditrust Fin. Servs. Corp.*, 168 F.3d at 215 (citing *Wildbur*, 974 F.2d at 639); *see also Estate of Bratton*, 215 F.3d at 522. The district court "must inquire only whether the 'record adequately supports the administrator's decision'; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim '[w]ithout some concrete evidence in the administrative record.'" *Gooden*, 250 F.3d at 333 (quoting *Vega*, 188 F.3d at 298); accord *Robinson*, 443 F.3d at 395.

In assessing a claim for disability, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Furthermore, an administrator has no duty to conduct an independent investigation before denying a claim. *See Vega*, 188 F.3d at 299 ("when confronted with a denial of benefits ... the district court may not impose a duty to reasonably investigate on the administrator"). Nonetheless, "[a]lthough the administrator has no duty to contemplate arguments that could have been made by the claimant, [the court should] expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.*

In this instance, Hartford's decision to discontinue Abate's benefits was based upon an incomplete administrative record and overlooked other pertinent information. Specifically, Hartford did not consider Dr. Hansen's vocational analysis

and did not adequately take into account Abate's carpal tunnel syndrome in identifying jobs that Abate could perform to satisfy the "Any Job" provision. Chapman–Black conceded that three job titles were proposed for Abate based on his perceived capabilities: belt repairer, tool repairer, and repairer of hand tools. Although she was aware that Abate suffered from carpal tunnel syndrome, Chapman–Black nonetheless described Abate's reaching, handling, and fingering capabilities as "Unknown." By entering these capabilities of Abate as "Unknown" in OASYS, Chapman–Black prevented the computer from placing any restrictions on Abate's ability to perform these tasks. The data system thus allowed jobs that required frequent reaching, handling, or fingering to be identified as suitable for Abate.

At deposition, Chapman–Black explained how the insertion of "Unknown" for certain skill sets places no restrictions on the claimant's abilities in that regard and yields similar search results as the insertion of "Frequently":

Q: [Y]ou set the [reaching, handling, and fingering] factors as "Unknown;" correct?

A: Correct.

Q: And so therefore, the computer would allow Mr. Abate to be matched with a job that required frequent handling and frequent reaching and frequent fingering because there were no restrictions placed on him?

A: Correct.

Q: In other words, in the OASYS system, "Unknown" basically has the same effect as saying, you can do it frequent [sic]?

A: It is actually unknown as stated.

Q: Let's put it this way, "Unknown" means that a person will never be disqualified on that fact; correct?

A: It opens the search.

Q: It what?

A: It opens the search. So when you put "Unknown," you don't have enough definitive information to say they can or they can't, so you have the option to put "Unknown."

Q: And that therefore, OASYS will then match job seekers with even a job that requires frequent reaching or frequent handling or frequent fingering because it has been set to "Unknown;" correct?

A: Correct.

Abate alleges that even though Hartford knew he had carpal tunnel syndrome, Chapman–Black still entered "Unknown" when describing his reaching, handling, and fingering capabilities, thus causing OASYS to match him with jobs that require frequent reaching, handling, or fingering. In light of the fact that the three jobs generated by OASYS require considerable manual dexterity on a repeated basis, it is apparent that an individual who can only do occasional reaching, handling, or fingering would not meet the job requirements for a belt repairer, tool repairer, or repairer of hand tools. Chapman–Black admitted that had these factors been set to "occasionally," Abate would have been disqualified from the three jobs identified by OASYS:

Q: And you agree with me that had fingering, handling and reaching been set even to "Occasionally" as opposed to "Frequently," that would have disqualified Mr. Abate from even the three jobs that OASYS put out?

A: Yes.

In light of Hartford's lack of consideration of Dr. Hansen's report, its failure to take into account all the limitations of Abate's carpal tunnel syndrome, and its reliance upon apparently flawed OASYS test results, the court concludes that Abate's case should be remanded to Hartford's administrator for further consideration. *See Moller v. El Campo Aluminum Co.*, 97 F.3d 85, 89 (5th Cir.1996) (remand for the plan administrator to consider new evidence, including testimony of vocational rehabilitation expert, was appropriate); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 n. 7 (5th Cir.1994) (remand to plan administrator with instructions to take additional evidence is proper form of relief for insufficient administrative record); *Blum v. Spectrum Rest. Group, Inc.*, 261 F.Supp.2d 697, 710 n. 8 (E.D.Tex.2003), *aff'd*, 140 Fed.Appx. 556 (5th Cir.2005) (proper remedy for incomplete administrative record is remand to plan administrator).

III. *Conclusion*

After reviewing the information contained in the administrative record and the summary judgment evidence, the court concludes that remand is warranted so that Hartford can consider Dr. Hansen's report in making its decision and reevaluate the OASYS analysis once the limitations indicated by Abate's carpal tunnel syndrome are properly taken into account in the coding. Accordingly, Hartford's Motion for Summary Judgment and Motion to Strike are DENIED. Abate's Motions to Supplement the Administrative Evidence are GRANTED, and his Motion for Summary Judgment is DENIED as premature in view of the remand of this case to the plan administrator.